UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAXON MORTGAGE SERVICES, INC. AS SERVICER FOR JP MORGAN CHASE BANK, AS TRUSTEE AND CUSTODIAN<br>Plaintiff,<br><br>v.<br><br>U.S. BANK, N.A., AS TRUSTEE, NEW CENTURY HOME EQUITY LOAN TRUST, SERIES 2000-NCB, INTERNAL REVENUE SERVICE, BANK OF AMERICA, N.A., RICHARD FEDERICO, JR.<br>Defendants | **CIVIL ACTION No. 07-11932** |

**MEMORANDUM IN OPPOSITION TO THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF THE DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Countrywide Home Loans, Inc. ("Countrywide"), Defendant and Plaintiff-in-Counterclaim, hereby opposes the motion for summary judgment of the plaintiff, Saxon Mortgage Services, Inc. ("Saxon") and cross moves for summary judgment on the counterclaim.

As grounds for its opposition and cross-motion, Countrywide states that there are genuine issues of material fact as to whether the mortgage foreclosed by Saxon properly covered both units of 21-23 Lexington Street, Weston, Massachusetts (the "Property"). As a result, Saxon is not entitled to judgment as a matter of law. On the other hand, the undisputed facts fully support Countrywide's counterclaim for equitable subrogation and judgment should enter for Countrywide as a matter of law. As further grounds for the opposition, Countrywide states as follows.

## II. FACTS

1. By a Quitclaim Deed dated October 18, 1996 Richard Federico, Jr. ("Borrower") purchased 21-23 Lexington Street, 21-23 Lexington Street Condominium, Weston, Massachusetts (the "Property"). Statement of Material Facts Pursuant to Local Rule 56.1 ("SOF") ¶ 1.

2. On March 11, 1999, the Borrower granted to Saxon Mortgage, Inc. a mortgage in the amount of $189,000.00 secured by Unit 2 of the Property ("Saxon Unit 2 Mortgage"). The Saxon Unit 2 Mortgage was recorded with the Middlesex (Southern District) Registry of Deeds (the "Registry") in Book 29914, Page 29. SOF ¶ 2.

3. On March 11, 1999, Saxon Mortgage, Inc. assigned the Saxon Unit 2 Mortgage to Chase Bank of Texas, N.A. and recorded said assignment with the Registry in Book 29914, Page 46. SOF ¶ 3.

4. On March 11, 1999, the Borrower granted to Saxon Mortgage, Inc. a mortgage in the amount of $216,000.00 purportedly secured by Units 1 & 2 of the Property ("Saxon Units 1 & 2 Mortgage"). The Saxon Units 1 & 2 Mortgage was recorded with the Registry in Book 29919, Page 182. SOF ¶ 4.

5. Saxon was in second position at the time of the recording of the Saxon Units 1 & 2 Mortgage with respect to Unit 2 of the Property. SOF ¶ 5.

6. On March 11, 1999, Saxon Mortgage, Inc. assigned the Saxon Units 1 & 2 Mortgage to Chase Bank of Texas, N.A. and recorded said assignment with the Registry in Book 29919, Page 196. SOF ¶ 6.

7. On May 12, 2000, the Borrower granted to New Century Mortgage Corporation a mortgage in the amount of $260,000.00 secured by Unit 2 of the Property

("New Century Unit 2 Mortgage"). The New Century Unit 2 Mortgage was recorded with the Registry in Book 31399, Page 224. Countrywide is the present holder by assignment of the New Century Unit 2 Mortgage. SOF ¶ 7.

8. In accordance with the closing of the New Century Unit 2 Mortgage, the HUD-1 Settlement Statement indicates that $191,613.83 was disbursed to Meritech Mortgage Services, Inc. (former name of Saxon Mortgage, Inc.). SOF ¶ 8.

9. These funds were disbursed in order to pay off the Saxon Unit 2 Mortgage. SOF ¶ 9.

10. The funds paid off the entire balance of the Saxon Unit 2 Mortgage. SOF ¶ 10.

11. By paying off the Saxon Unit 2 Mortgage, New Century and its assigns intended to be in first position with respect to Unit 2 of the Property. SOF ¶ 11.

12. On June 13, 2000, Chase Bank of Texas, N.A. executed a discharged of the Saxon Unit 2 Mortgage. Said discharge was recorded with the Registry in Book 31992, Page 309. SOF ¶ 12.

13. Saxon received full and complete satisfaction of the Saxon Unit 2 Mortgage. SOF ¶ 13.

14. Notwithstanding the foregoing, Saxon as the purported holder of the Saxon Units 1 & 2 Mortgage conducted a foreclosure sale of Units 1 & 2 of the Property. SOF ¶ 14.

## II. THE SUMMARY JUDGMENT STANDARD

"Summary judgment procedure is a method for promptly disposing of actions in which there is no genuine issue as to any material fact." Notes of Advisory Committee,

Fed. R. Civ. P. 56. Rule 56 serves the overall goal of the Federal Rules, as set forth in Fed. R. Civ. P. 1, to obtain the just and speedy determination of actions.

Once the moving party avers "an absence of evidence to support the non moving party's case" (*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)), "[t]he burden . . . shifts to the nonmovant to establish the existence of at least one fact issue which is both 'genuine' and 'material.'" *Garside v. Osco Drug, Inc*., 895 F.2d 46, 48 (1st Cir. 1990). A genuine issue is one in which the non-moving party has provided evidence such that "a reasonable jury could find for the non-moving party." *Daury v. Smith*, 842 F.2d 9, 11 (1st Cir. 1988).

The Court must view the entire record in the light most hospitable to the non-movant and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir. 1993). Additionally, the non-moving party is not required to submit evidence in a form admissible at trial. *Celotex Corp.*, 477 U.S. at 324.

If, after viewing the record in the non-movant's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. *In re McCabe,* 345 B.R. 1, 5 (D. Mass. 2006).

Applying the established standard for motions for summary judgment, the facts revealed in discovery warrant the entry of summary judgment for Countrywide on Counts I & II of the Counterclaim and the denial of the plaintiffs' motion for summary judgment seeking dismissal of the Counterclaim.

## III. ARGUMENT

### A. SAXON'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED AND INSTEAD SUMMARY JUDGMENT SHOULD ENTER FOR COUNTRYWIDE'S ON COUNTS I AND II OF ITS COUNTERCLAIM

Countrywide's counterclaim consists of three counts: Unjust Enrichment (Count I), Equitable Subrogation (Count II), and Declaratory Judgment (Count III). Essentially, Countrywide is seeking a determination from the Court that its mortgage (which was purportedly extinguished by Saxon's foreclosure) has at least partial priority over Saxon's mortgage and, therefore Countrywide is entitled to a greater share of the foreclosure proceeds than simply the surplus. As argued below, the undisputed facts prove that Countrywide has valid claims for equitable subrogation and unjust enrichment which results in a partial priority over Saxon. The claim for declaratory judgment on the other hand is based upon disputed facts and summary judgment therefore is not appropriate on that count.

#### *1. Based Upon the Undisputed Facts, Countrywide is Entitled to a Judgment Declaring That Its Mortgage Has Priority Over the Saxon Mortgage as to Unit 2 Under the Doctrine of Equitable Subrogation*.

Based upon the undisputed facts, it is apparent that when the Saxon Units 1 & 2 Mortgage was recorded, Saxon was voluntarily accepting a first mortgage on Unit 1 and a *second mortgage* on Unit 2.[1] The Saxon Units 1 & 2 Mortgage was immediately assigned to Chase Bank of Texas, N.A. ("Chase"), which also took that mortgage with actual or constructive knowledge that it was accepting a first mortgage on Unit 1 and a

[1] This portion of the argument assumes, for the purposes of this motion for summary judgment only, that the Saxon Units 1 & 2 Mortgage was intended to cover both units, which as discussed below does not seem at all plausible.

second mortgage on Unit 2, behind a superior mortgage which was also assigned to Chase.

The loan by New Century was secured by a mortgage on Unit 2. The loan proceeds were used to pay off the Saxon Unit 2 Mortgage, which was then in first position, ahead of the Saxon Units 1 & 2 Mortgage. As stated in the Deposition Testimony of Amber Hearst, New Century, and its assigns (including Countrywide), intended for the New Century Unit 2 Mortgage to be a first mortgage on Unit 2. *See* Affidavit of Amber Hearst attached to Affidavit of Lauren A. Solar ¶ 7. By paying off the Saxon Unit 2 Mortgage loan, the holder of the New Century Unit 2 Mortgage, Countrywide, is entitled to be subrogated to the rights of the first mortgagee to the extent of the amount of the payoff, which in this case was $191,613.83.

A party seeking relief through subrogation must prove that: (1) it made payment to protect its own interest, (2) it did not act as volunteer, (3) it was not primarily liable for debt paid, (4) it paid off the entire encumbrance, and (5) subrogation would not work any injustice to rights of junior mortgage holder. *East Boston Sav. Bank v. Ogan,* 428 Mass. 327, 330-31 (1998). The doctrine is a broad equitable remedy, and depending on individual cases, may apply even where one or more of factors is absent. *Id.*

In the instant case, all of the elements of subrogation have been met by Countrywide as demonstrated by the undisputed facts. First, Countrywide paid off the old mortgage with the clear intent of holding a valid first mortgage upon the entire property. *See* Affidavit of Lakeitra Webb ¶ 6-9. Second, Countrywide was not a "volunteer" in the transaction but was a lender who conditioned its loan upon the Borrower's promise, secured by a valid mortgage, to pay the note. *See* Affidavit of

Lakeitra Webb ¶ 3-5. Third, Countrywide was not liable on the old mortgage note. Fourth, the proceeds of Countrywide's mortgage loan paid off the entire old mortgage note held by Saxon. *See* Affidavit of Lakeitra Webb ¶ 8. Fifth, and last, Saxon will not be prejudiced by the application of equitable subrogation in this case because it knowingly accepted a mortgage on Unit 2 which was junior to an existing mortgage. Equitable subrogation will place Saxon back in its rightful place as second mortgagee. Otherwise, Saxon would be unjustly enriched to the extent of the $191,613.83 that was legitimately owed on the old mortgage.

***2. Equitable Subrogation Will Prevent an Unjust Windfall for Saxon***

Saxon contends that if the doctrine of equitable subrogation is applied, the rights of Saxon and the subsequent purchaser would be prejudiced and that this would result in a windfall for Countrywide. This is simply is not true and without subrogation, it would be Saxon who would receive the windfall and the injustice would work against Countrywide, not Saxon. Unless equitable subrogation is applied, Saxon will have vaulted from a second mortgagee position as to Unit 2, into a first priority position through sheer luck and without any additional consideration on their part. That is precisely the type of windfall that equitable subrogation is designed to avoid. *See East Boston Sav. Bank,* 428 Mass. at 333-34.

The application of equitable subrogation will not affect the validity of the foreclosure completed by Saxon, but simply entitles Countrywide to a portion of the foreclosure proceeds on a priority basis. Through the foreclosure sale, Saxon sold *both* Units for $480,000. Applying equitable subrogation would result in a 50/50 split of the foreclosure proceeds – $240,000 for Saxon and $240,000 for Countrywide, in partial

satisfaction of the first mortgages. There would be no surplus funds and the remainder of this interpleader action would then become moot.

***3. Equitable Subrogation is Appropriate Even where there is Constructive Notice of the Intervening Lien.***

Saxon also argues that equitable subrogation is not appropriate in this case because New Century had actual or constructive notice of the Saxon Units 1 & 2 Mortgage when the New Century Unit 2 Mortgage was recorded. Saxon does not cite any evidence to support its contention that New Century or Countrywide had actual knowledge of the Saxon Units 1 & 2 Mortgage at the time of the New Century loan. On the contrary, the facts demonstrate that New Century and Countrywide did not know of the Saxon Units 1 & 2 Mortgage. *See* Transcript of Amber Hearst attached as Exhibit E to Affidavit of Lauren A. Solar; *see also* Affidavit of Lakeitra Webb ¶ 10.

Constructive knowledge of the Saxon Units 1 & 2 Mortgage does not prevent the application of equitable subrogation. In fact, every case in which equitable subrogation is used against an intervening lienholder involves constructive knowledge of a recorded instrument. Equitable subrogation would not be necessary unless there were constructive knowledge. Not surprisingly, therefore, the *East Boston Sav. Bank* opinion says nothing that would prevent equitable subrogation from being applied even where the subrogee has constructive knowledge of a prior interest. *See East Boston Sav. Bank,* at 333. *See also Option One Mortg. Corp. v. Oakhem,* 72 Mass. App. Ct. 1104 (2008).

***4. Countrywide is Entitled to Judgment Against Saxon to Avoid an Unjust Enrichment***

It is undisputed that at the time of the recording of the Saxon Units 1 & 2 Mortgage that Saxon was subordinate to the Saxon Unit 2 Mortgage, which secured a

debt of $189,000.00 with respect to Unit 2 of the Property. It is also undisputed that Countrywide paid off the Saxon Unit 2 Mortgage and the Saxon Unit 2 Mortgage was subsequently discharged.

"A court applying equitable subrogation must ensure that the intervening mortgagee is not unjustly enriched by succeeding to first priority." *East Boston Sav. Bank,* 428 Mass. at 334. If Countrywide is subrogated to the priority position of that original mortgage, Saxon will be in the same position as it was when it originally acquired its interest. If equitable subrogation is not applied, Saxon will be unjustly enriched because it will ascend to first priority with respect to unit 2 of the Property through no act of it's own. *Id.* at 333-34.

A claim for unjust enrichment under Massachusetts law requires proof of "unjust enrichment of one party and unjust detriment to the other party." *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.,* 412 F.3d 215, 234 n. 7 (1st Cir. 2005). In *In re McCabe,* 345 B.R. 1 (D. Mass. 2006), the court outlined the requirements for a claim for unjust enrichment. The court stated: "[A] plaintiff must show (1) an enrichment; (2) an impoverishment; (3) a relation between the enrichment and the impoverishment; (4) an absence of justification and (5) the absence of a remedy provided by law." *Id.* at 9.

As stated in the equitable subrogation analysis above, Saxon was unjustly enriched when the proceeds of the New Century Mortgage Unit 2 were used to pay off the Saxon Unit 2 Mortgage. As a result of this enrichment, Countrywide has suffered a detriment to which there is no remedy provided by law.

Countrywide has a valid claim for equitable subrogation and unjust enrichment which are fully supported by the undisputed facts. Accordingly, summary judgment

should enter for Countrywide on Counts I and II of its counterclaim, and Saxon's motion for summary judgment should be denied.

### B. SAXON'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED AS TO COUNT III OF THE COUNTERCLAIM BECAUSE OF THE EXISTENCE OF DISPUTED FACTS

Count III of Countrywide's counterclaim seeks a judgment declaring that the New Century Unit 2 Mortgage, now held by Countrywide, was not extinguished by the foreclosure of the Saxon Units 1 & 2 Mortgage. Material disputes of fact exist which prevent the entry of summary judgment on that count for either party.

At the heart of the count for declaratory judgment is the question of what property was actually encumbered, or intended to be encumbered, by the Saxon Units 1 & 2 Mortgage. Discovery in this case has revealed facts from which the fact-finder may determine that Saxon was not intended to be the holder of a valid first mortgage on Units 1 & 2 and, therefore, its foreclosure was defective, at least as to Unit 2.

All of Saxon's own loan documentation demonstrates that it never intended to obtain a first mortgage on both Units 1 & 2, but simply on Unit 1. That documentation includes the following:

- Saxon obtained a lender's title insurance policy from First American Title Insurance Company ("Title Policy") in connection with the Saxon Units 1 & 2 mortgage. A copy of the Title Policy is attached to the Affidavit of Lauren A. Solar ¶ 3. Schedule A of the Title Policy identifies the property as "21 Lexington Street known as Unit 1 of the 21-23 Lexington Street, Condominium." The Title Policy does not except, on Schedule B, any senior liens or encumbrances. If the Saxon Units 1 & 2 Mortgage was intended to secure Units 1 & 2, the policy

would reflect that Saxon was, as of March 11, 1999, in second position with respect to Unit 2 of the Property.

- The Uniform Residential Loan Application ("Loan Application") completed by the Borrower identified the subject property as "21 Lexington Street Unit 1, Weston, MA." A copy of the Loan Application is attached to the Affidavit of Lauren A. Solar ¶ 4. The handwritten Loan Application is the only documentation completed by the Borrower and is the best, and only, indication of the Borrower's intent regarding the Saxon Units 1 & 2 Mortgage. The Loan Application demonstrates that the Borrower's intent was to encumber Unit 1 only, and not Units 1 & 2. At a minimum, the Court could draw that inference from the Loan Application.
- The Appraisal dated February 24, 1999 ("Appraisal") relating to the Saxon Units 1 & 2 Mortgage references the property as 21 Lexington Street, Weston, MA. A copy of the Appraisal is attached to the Affidavit of Lauren A. Solar ¶ 5. The Appraisal describes the subject property as, "a three bedroom, townhouse style condominium" and values the subject property at $300,000.00. The Appraisal does not list Units 1 & 2, but simply Unit 1.
- The Loan Underwriting Approval Commitment ("Commitment") relating to the Saxon Units 1 & 2 Mortgage lists the Property address as 21 Lexington Street Unit #1, Weston, Massachusetts. A copy of the Commitment is attached to the Affidavit of Lauren A. Solar ¶ 6. Additionally, the Commitment lists the Saxon Units 1 & 2 Mortgage as a 1st mortgage. The Commitment does not contain any reference to unit 2.

All of the above documentation prepared in connection with the loan secured by the Saxon Units 1 & 2 Mortgage is sufficient to allow the fact finder to draw an inference that the lender and borrower intended to secure the loan with a mortgage on Unit 1 only, not Unit 2.

In essence, Count III of the Counterclaim seeks a reformation of the Saxon Units 1 & 2 Mortgage so as to reflect the true intent of the parties which was to encumber Unit 1 only. Under Massachusetts law, a written contract may be reformed if its language "does not reflect the true intent of both parties." *One Beacon America Ins. Co. v. Travelers Indem. Co., of Il*, 465 F.3d 38, 41 (1st Cir. 2006) (quoting Polaroid *Corp. v. Travelers Indem. Co.*, 610 N.E.2d 912, 917 (Mass. 1993)); *see also Mickelson v. Barnet*, 460 N.E.2d 566, 569 (Mass. 1984) (finding "a mutual mistake is reformable" where "the language adopted by the parties did not reflect their true intent"). Additionally, legal instruments, including deeds and mortgages, may be reformed on the ground of mutual mistake. *Buk Lhu v. Dignoti*, 727 N.E.2d 73 (Mass. 2000). Furthermore, it has long been established that an erroneous description of land in a written instrument may be corrected by reformation of the instrument if the error was due to a mutual mistake of fact by the parties. *Goode v. Riley*, 28 N.E. 228 (Mass. 1981).

The facts revealed in discovery are sufficient to create a triable issue as to the parties' intent. Summary judgment on this count, therefore, is not appropriate.

***1. The Court May Consider Extrinsic Evidence in Determining the Intent of the Parties with Respect to the Scope of the Saxon Units 1 & 2 Mortgage.***

Saxon contends that extrinsic evidence, such as the Title Policy and Loan Application, cannot be used to support Countrywide's claims of mutual mistake of the

parties. While this may be true in a contract interpretation case,[2] in the case of a mutual mistake, the party requesting reformation is not asking the court to interpret the contract but rather to conform the contract to the parties' intent. *One Beacon*, 465 F 3d at 41. Accordingly, the usual restrictions on contract interpretation, such as the parol evidence rule, do not apply to a court's inquiry into the parties' intent. *See Berezin,* 234 F.3d 68, 72 (1st Cir. 2000) (permitting the consideration of extrinsic evidence when one party to a contract alleges a mutual mistake in its terms). "In a reformation case, it does not matter that a contract unambiguously says one thing. A court still will accept extrinsic evidence in evaluating a claim that both parties to the contract intended it to say something else." *One Beacon,* 465 F.3d at 41.

To be entitled to reformation, a party must "establish that the undisputed material facts fully, clearly, and decisively show a mutual mistake," *Polaroid*, 610 N.E.2d at 918. Mutual mistakes justifying contract reformation may result simply from the parties' inattention or scrivener's errors. *See, e.g., Polaroid*, 610 N.E.2d at 917. As evidenced by the documents, such a mistake existed between Saxon and the Borrower when the incorrect property description was attached to the mortgage.

Intent of a party is an inherently elusive concept, which is difficult to conclude at summary judgment. "When the language of a contract reasonably permits two alternative interpretations, that ambiguity generally means that summary judgment is denied and that parol evidence may be admitted to resolve the ambiguity in light of the intent of the parties." *Massmanian v. DuBose***,** 2008 WL 698472, 1 (Mass. Super. 2008).

---

[2] Although even in contract cases, extrinsic evidence is allowed where a provision is ambiguous. *See New England Financial Resources, Inc. v. Coulouras*, 566 N.E.2d 1136 (Mass. App. Ct. 1991).

Additionally, Massachusetts courts have held that where intent or other state-of-mind questions are at issue, summary judgment is often inappropriate. *Flesner v. Technical Communication Corp.*, 410 Mass. 805, 809 (1991). Saxon's loan documents create genuine issues of material fact as to Saxon and the Borrower's intent to grant Saxon a first mortgage on each of the respective units of the Property. Therefore, Saxon's Motion should be denied.

***2. The Counterclaims are Not Barred by Any Statute of Limitations***

The Plaintiff's Memorandum also alleges that Countrywide's counterclaim is barred by the 6-year statute of limitations pursuant to Mass. Gen. Laws c. 260 § 2. As an initial matter, that statute does not apply to a challenge to a mortgage. Claims challenging mortgages are governed by the twenty-year statute of limitations set forth in G.L. c. 260 § 1.

Even if Saxon, were correct that the statute of limitations governing contracts applies, the undisputed facts demonstrate that Countrywide did not discover the title defect until February 6, 2004. As a result, the discovery rule would apply and any statute of limitations would not expire until February 6, 2010 at the earliest.

Lastly, because the claim for declaratory judgment was raised as a counterclaim in response to the Saxon's complaint, the savings clause of the statute of limitations would prevent the counterclaim from being time-barred. *See* G.L. c. 260 § 36. Under a Massachusetts provision governing limitations of actions, a counterclaim arising out of same transaction that is subject matter of plaintiff's claim may be asserted without regard to statutes of limitations. *In re Botelho*, 195 B.R. 558 (Bankr. D. Mass. 1996). As the mutual mistake of fact arose out of the same loan transaction as the Plaintiff's claim,

Countrywide's counterclaim is timely pursuant to G.L. c. 260 § 36 and not barred by the statute of limitations.

## IV. CONCLUSION

For the foregoing reasons, Countrywide respectfully requests that this Court deny the Plaintiff's Motion for Summary Judgment as there are genuine issues of material fact and Plaintiff is not entitled to judgment as a matter of law.

Countrywide Home Loans, Inc.
By its attorneys,

/s/ Lauren A. Solar____________

Thomas M. Looney
BBO #555040
Lauren A. Solar
BBO # 657289
Bartlett Hackett Feinberg P.C.
155 Federal Street, 9th Floor
Boston, MA 02110
617-422-0200

Dated: November 20, 2008